ALW:MAA
F.#2005R00711

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KENNETH E. MAHAFFY, JR.,
TIMOTHY J. O'CONNELL,
RALPH D. CASBARRO and
DAVID G. GHYSELS, JR.,

        Defendants.

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
1001(a)(2), 1348, 1349,
1512(b)(1), 1512(b)(2)(A),
1512(b)(3), 1512(k),
1952(a)(3), 2 and 3551
et seq.)

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### The Defendants

1.    The defendant KENNETH E. MAHAFFY, JR., was a stock broker licensed by the National Association of Securities Dealers ("NASD"). In or about and between 1997 and February 2003, MAHAFFY was employed as a stock broker at a branch office of Merrill Lynch & Co., Inc. ("Merrill Lynch") located at 1325 Franklin Avenue, Garden City, New York ("Merrill Lynch's Garden City branch office"). In or about and between February 2004 and June 2005, MAHAFFY was employed as a stock broker by Smith Barney, a division of Citigroup Global Markets, Inc. (collectively, "Citigroup"). MAHAFFY was employed at a branch

office of Citigroup located at 401 Broad Hollow Road, Melville, New York. Merrill Lynch and Citigroup were both broker-dealers of securities registered with the U.S. Securities and Exchange Commission ("SEC") and the NASD.

2.   The defendant TIMOTHY J. O'CONNELL was a stock broker licensed by the NASD. In or about and between 1997 and February 2005, O'CONNELL was employed as a stock broker at Merrill Lynch's Garden City branch office. In or about and between 2001 and February 2003, O'CONNELL and the defendant KENNETH E. MAHAFFY, JR., shared client commissions and worked together as partners at Merrill Lynch's Garden City branch office.

3.   The defendant RALPH D. CASBARRO was a stock broker licensed by the NASD. In or about and between 1998 and March 2005, CASBARRO was employed as a stock broker at a branch office of Citigroup located at 1345 Avenue of the Americas, New York, New York.

4.   The defendant DAVID G. GHYSELS, JR., was a stock broker licensed by the NASD. In or about and between March 2001 and April 2003, GHYSELS was employed as a stock broker at a branch office of Lehman Brothers ("Lehman") located in Palm Beach, Florida.

5.   As stock brokers at Merrill Lynch, Citigroup and Lehman (collectively, the "Brokerage Firms"), the defendants

KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., each owed fiduciary and other duties of trust and confidentiality to their respective Brokerage Firms and the customers of their respective brokerage firms.

A.B. Watley, Inc.

6.    A.B. Watley, Inc. ("A.B. Watley"), was a broker-dealer of securities registered with the SEC and NASD, which maintained its principal office at 40 Wall Street, New York, New York. A.B. Watley also maintained several branch offices, including offices in Forest Hills, New York, and Melville, New York. A.B. Watley was commonly referred to as a "day trading" firm. "Day trading" is a stock trading strategy whereby stock traders, through a high volume of trading activity, attempt to profit from slight changes in the prices of securities by buying and selling securities within a very short period of time. Typically, day traders both buy and sell a given security within a single trading day.

Millennium Brokerage, LLC

7.    Millennium Brokerage, LLC ("Millennium") was a broker-dealer of securities registered with the SEC and the NASD, and maintained its principal office in Woodcliff, New Jersey. Millenium also maintained a branch office at 3 Park Avenue, New York, New York. Millennium was also a day trading firm.

The Front-Running Scheme

8. In or about and between January 2002 and December 2003, both dates being approximate and inclusive, the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., together with others, devised, implemented, oversaw and participated in a fraudulent "front-running" scheme. Among other circumstances, front-running occurs when a stock trader: (a) improperly obtains material, non-public information from a brokerage firm concerning large orders to purchase or sell securities, which have been placed with the brokerage firm by its institutional customers but have not yet been executed; and (b) subsequently executes trades in the same securities, prior to the execution of the larger customer orders, in anticipation of the movement in price that the large trades are likely to cause. Front-running harms a brokerage firm's customers because it allows the stock trader to take advantage of limited opportunities to purchase and sell the same securities in which the firm's customers are interested before the customers are able to do so. As a result, the firm's customers may not obtain as favorable a price as they would have absent the front-running.

The "Squawk Boxes"

9. It was a part of the scheme that the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO

and DAVID G. GHYSELS, JR., provided day traders at A.B. Watley and Millennium (the "Day Traders") with material, non-public customer order information by permitting the Day Traders to listen secretly to internal speaker systems known as "Squawk Boxes" within the Brokerage Firms. The information that was broadcasted through the Squawk Boxes included material, non-public information concerning large orders to purchase and sell securities that had been placed with the Brokerage Firms by their institutional clients. The large orders involved quantities of stock that were sufficiently large that the transactions could be expected to influence th market price for the stocks in question.

10. As a further part of the scheme, the Day Traders used material, non-public customer order information that was disseminated through the Squawk Boxes by purchasing and selling securities that were the subject of Squawk Box orders prior to when the Brokerage Firms executed those orders. Thus, for example, when the Squawk Boxes disseminated information concerning a large order to buy a particular stock, the Day Traders would purchase shares of the same stock before the larger buy order was executed, expecting that the imminent execution of the large buy order would cause the market price of the particular stock to rise. Conversely, when the Squawk Boxes disseminated information concerning a large order to sell a particular stock, the Day Traders would short sell the same

6

securities before the larger sell order was executed, expecting
that the imminent execution of the large sell order would cause
the market price of the particular stock to fall.

11. Short selling is a technique in which investors
make money if the price of a stock falls. Specifically, short
selling involves "borrowing" stock from another party and selling
it, with an agreement to return the stock to the other party at a
later date. The short seller anticipates that the stock's price
will fall, allowing the short seller to buy the stock back later
at a lower price and return the stock to the lender. Thus, short
sellers profit from decreases in the price of a stock that they
have sold short.

12. The defendants KENNETH E. MAHAFFY, JR., TIMOTHY J.
O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., provided
the material, non-public customer order information to the Day
Traders in violation of fiduciary and other duties of trust and
confidence that were owed by MAHAFFY, O'CONNELL, CASBARRO and
GHYSELS to their respective Brokerage Firms and the clients of
those Brokerage Firms.

Bribes Using Wash Trades

13. It was a further part of the scheme that in
exchange for access to the Brokerage Firms' Squawk Boxes, the Day
Traders paid bribes in the form of cash, commissions and other

things of value to KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR.

14. One method by which the Day Traders bribed the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., was by generating commissions through the execution of "wash trades." The "wash trades" consisted of prearranged pairs of trades of the same securities between different accounts that the Day Traders maintained at the Brokerage Firms. Typically, the Day Traders executed the wash trades by simultaneously placing orders to: (1) purchase a block of stock at a particular price through one Brokerage Firm account; and (2) sell a similarly sized block of the same stock at the same price through a different Brokerage Firm account. The wash trades involved no net change in beneficial ownership of stock and had no legitimate investment purpose. The wash trades were executed solely as a means of generating commissions for MAHAFFY, O'CONNELL, CASBARRO and GHYSELS in exchange for Squawk Box access.

The Cover-Up

15. In or about and between December 2003 and April 2005, the defendant TIMOTHY J. O'CONNELL, together with others, devised and agreed to devise false cover stories to provide to the SEC, law enforcement authorities and internal investigators at Merrill Lynch for the purpose of concealing O'CONNELL's

participation in the fraudulent front-running scheme. In or
about December 2003, O'CONNELL was interviewed by members of
Merrill Lynch's internal compliance staff who were investigating
O'CONNELL's use of Merrill Lynch's Squawk Box. During this
interview, O'CONNELL falsely stated that he had never allowed day
traders at Millennium to listen to Merrill Lynch's Squawk Box.

16. In or about May 2004, a duly empaneled grand jury
in the United States District Court for the Eastern District of
New York (the "Grand Jury"), with the assistance of the United
States Attorney's Office for the Eastern District of New York and
the United States Postal Inspection Service, began investigating,
among other things, the defendant TIMOTHY J. O'CONNELL's
involvement in the fraudulent front-running scheme (the "Grand
Jury Investigation"). On or about June 7, 2004, a United States
Postal Inspector assigned to the Grand Jury Investigation
interviewed O'CONNELL. During this interview, O'CONNELL falsely
denied providing the Day Traders with access to Merrill Lynch's
Squawk Box.

17. In or about November 2004, the defendant TIMOTHY
J. O'CONNELL became aware that the SEC and law enforcement
authorities were seeking to interview his assistant at Merrill
Lynch ("Jane Doe") in connection with the Grand Jury
Investigation and a parallel civil investigation that was being
conducted by the SEC (the "SEC Investigation"). O'CONNELL

directed Jane Doe to lie to law enforcement authorities and the SEC concerning, among other things, O'CONNELL's use of Merrill Lynch's Squawk Box. On or about December 14, 2004, during an interview in Brooklyn, New York, with an SEC staff member and a United States Postal Inspector in connection with the Grand Jury Investigation and the SEC Investigation, Jane Doe followed O'CONNELL's instructions and falsely stated that she had no knowledge of O'CONNELL providing the Day Traders with access to Merrill Lynch's Squawk Box.

18. In or about February 2005, the defendant TIMOTHY J. O'CONNELL became aware that Jane Doe had been subpoenaed to testify before the Grand Jury in connection with the Grand Jury Investigation. O'CONNELL instructed Jane Doe to lie to the Grand Jury about, among other things, O'CONNELL's use of Merrill Lynch's Squawk Box. On or about February 17, 2005, Jane Doe testified under oath before the Grand Jury. In accordance with O'CONNELL's instructions, during her Grand Jury testimony, Jane Doe falsely denied any knowledge of O'CONNELL providing the Day Traders with access to Merrill Lynch's Squawk Box.

COUNT ONE
(Conspiracy to Commit Securities Fraud)

19. The allegations contained in paragraphs 1 through 18 are realleged and incorporated as though fully set forth in this paragraph.

20. In or about and between January 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., together with others, did knowingly and intentionally conspire to execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, all in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNTS TWO THROUGH TWENTY
(Securities Fraud)

21. The allegations contained in paragraphs 1 through 18 are realleged and incorporated as though fully set forth in this paragraph.

22.   On or about the dates indicated below, within the Eastern District of New York and elsewhere, the defendants indicated below, together with others, did knowingly and intentionally execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, as indicated below:

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|---|---|---|---|---|---|
| 2 | MAHAFFY O'CONNELL | Short sales of at least 23,000 shares of Pfizer, Inc. common stock at an average price of approximately $28.88 per share | A.B. Watley | Merrill Lynch Squawk Box | 7/16/02 |

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|-------|------------|--------------|----------|-----------------------------------|------|
| 3 | CASBARRO | Short sales of at least 36,000 shares of Noble Corp. common stock at an average price of approximately $28.63 per share | A.B. Watley | Citigroup Squawk Box | 7/24/02 |
| 4 | MAHAFFY O'CONNELL | Purchases of at least 15,000 shares of Vishay Intertechnology, Inc. common stock at an average price of approximately $16.61 per share | A.B. Watley | Merrill Lynch Squawk Box | 7/26/02 |
| 5 | CASBARRO | Purchases of at least 18,000 shares of Goodrich Corp. common stock at an average price of approximately $22.28 per share | A.B. Watley | Citigroup Squawk Box | 7/29/02 |
| 6 | CASBARRO | Purchases of at least 44,000 shares of Duke Energy Corp. common stock at an average price of approximately $17.34 per share | A.B. Watley | Citigroup Squawk Box | 8/20/02 |

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|---|---|---|---|---|---|
| 7 | GHYSELS | Purchases of at least 17,000 shares of Capital One Financial Corp. common stock at an average price of approximately $37.64 per share | A.B. Watley | Lehman Squawk Box | 8/22/02 |
| 8 | GHYSELS | Short sales of at least 22,000 shares of Commerce Bancorp Corp. common stock at an average price of approximately $45.15 per share | A.B. Watley | Lehman Squawk Box | 9/12/02 |
| 9 | GHYSELS | Short sales of at least 22,000 shares of Supervalu Inc. common stock at an average price of approximately $17.08 per share | A.B. Watley | Lehman Squawk Box | 9/23/02 |
| 10 | MAHAFFY O'CONNELL | Purchases of at least 28,000 shares of Liberty Media Corp. common stock at an average price of approximately $7.76 per share | A.B. Watley | Merrill Lynch Squawk Box | 9/23/02 |

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|-------|------------|--------------|----------|-----------------------------------|------|
| 11 | GHYSELS | Short sales of at least 35,000 shares of Home Depot Inc. common stock at an average price of approximately $25.52 per share | A.B. Watley | Lehman Squawk Box | 10/2/02 |
| 12 | GHYSELS | Purchases of at least 13,000 shares of Deere and Co. common stock at an average price of approximately $44.40 per share | A.B. Watley | Lehman Squawk Box | 10/4/02 |
| 13 | MAHAFFY O'CONNELL | Sales and short sales of at least 54,000 shares of Citigroup, Inc. common stock at an average price of approximately $33.66 per share | A.B. Watley | Merrill Lynch Squawk Box | 10/16/02 |
| 14 | MAHAFFY O'CONNELL | Purchases of at least 45,000 shares of Taubman Centers Inc. common stock at an average price of approximately $16.42 per share | A.B. Watley | Merrill Lynch Squawk Box | 11/13/02 |

15

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|---|---|---|---|---|---|
| 15 | O'CONNELL | Purchases of at least 8,000 shares of Waters Corp. common stock at an average price of approximately $21.31 per share | A.B. Watley | Merrill Lynch Squawk Box | 1/28/03 |
| 16 | CASBARRO | Purchases of at least 40,000 shares of EMC Corp. common stock at an average price of approximately $7.20 per share | A.B. Watley | Citigroup Squawk Box | 1/28/03 |
| 17 | O'CONNELL | Purchases of at least 10,000 shares of American Financial Group, Inc. common stock at an average price of approximately $19.79 per share | A.B. Watley | Merrill Lynch Squawk Box | 2/5/03 |
| 18 | O'CONNELL | Purchases of at least 54,000 shares of Cardinal Health, Inc. common stock at an average price of approximately $53.52 per share | A.B. Watley | Merrill Lynch Squawk Box | 4/24/03 |

| COUNT | DEFENDANTS | TRANSACTIONS | ACCOUNTS | SOURCE OF LARGE ORDER INFORMATION | DATE |
|-------|-----------|--------------|----------|-----------------------------------|------|
| 19 | O'CONNELL | Purchases of at least 26,000 shares of First Data Corp. common stock at an average price of approximately $43.47 per share | A.B. Watley | Merrill Lynch Squawk Box | 6/5/03 |
| 20 | CASBARRO | Purchases of at least 29,000 shares of AMR Corp. common stock at an average price of approximately $9.29 per share | A.B. Watley | Citigroup Squawk Box | 6/24/03 |

(Title 18, United States Code, Sections 1348, 2 and 3551 et seq.)

COUNT TWENTY-ONE
(Conspiracy to Violate the Travel Act)

23. The allegations contained in paragraphs 1 through 18 are realleged and incorporated as though fully set forth in this paragraph.

24. In or about and between January 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., together with others, did knowingly and willfully conspire to use the mail and facilities in interstate commerce with intent to promote, manage, establish,

carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit: Commercial Bribe Receiving in the Second Degree, in violation of New York Penal Law Section 180.05, and thereafter to perform the promotion, management, establishment, carrying on, and facilitation of the promotion, management, and carrying of such unlawful activity, to wit: by executing trades through the New York Stock Exchange and causing trade confirmations to be transported through the United States mail, in violation of Title 18, United States Code, Section 1952(a)(3).

25. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, RALPH D. CASBARRO and DAVID G. GHYSELS, JR., together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

a. On or about August 22, 2002, the defendants KENNETH E. MAHAFFY, JR., and TIMOTHY J. O'CONNELL executed an order to sell 15,000 shares of General Electric Co. common stock at a price of approximately $32.40 per share on behalf of the day traders at A.B. Watley.

b. On or about August 22, 2002, the defendant DAVID G. GHYSELS, JR., executed an order to purchase 15,000

shares of General Electric Co. common stock at a price of approximately $32.40 per share on behalf of the day traders at A.B. Watley.

c. On or about September 13, 2002, the defendants KENNETH E. MAHAFFY, JR., and TIMOTHY J. O'CONNELL executed an order to purchase 40,000 shares of Solectron Corp. common stock at a price of approximately $3.79 per share on behalf of the day traders at A.B. Watley.

d. On or about September 13, 2002, the defendant DAVID G. GHYSELS, JR., executed an order to sell 40,000 shares of Solectron Corp. common stock at a price of approximately $3.79 per share on behalf of the day traders at A.B. Watley.

e. On or about November 14, 2002, the defendants KENNETH E. MAHAFFY, JR., and TIMOTHY J. O'CONNELL executed an order to sell 30,000 shares of Solectron Corp. common stock at a price of approximately $3.44 per share on behalf of the day traders at A.B. Watley.

f. On or about November 14, 2002, the defendant RALPH D. CASBARRO executed an order to purchase 30,000 shares of Solectron Corp. common stock at a price of approximately $3.44 per share on behalf of the day traders at A.B. Watley.

g. On or about December 19, 2002, the defendants KENNETH E. MAHAFFY, JR., and TIMOTHY J. O'CONNELL executed an order to sell 20,000 shares of Dole Food Company, Inc. common

stock at a price of approximately $32.65 per share on behalf of
the day traders at A.B. Watley.

        h.    On or about December 19, 2002, the defendant
RALPH D. CASBARRO executed an order to purchase 20,000 shares of
Dole Food Company, Inc. common stock at a price of approximately
$32.65 per share on behalf of the day traders at A.B. Watley.

        i.    On or about March 24, 2003, the defendant
TIMOTHY J. O'CONNELL executed an order to purchase 20,000 shares
of Barrick Gold Corp. common stock at a price of approximately
$15.02 per share on behalf of the day traders at A.B. Watley.

        j.    On or about March 24, 2003, the defendant
RALPH D. CASBARRO executed an order to sell 20,000 shares of
Barrick Gold Corp. common stock at a price of approximately
$15.02 per share on behalf of the day traders at A.B. Watley.

        k.    On or about May 15, 2003, the defendant
TIMOTHY J. O'CONNELL executed an order to sell 40,000 shares of
Solectron Corp. common stock at a price of approximately $3.75
per share on behalf of the day traders at A.B. Watley.

        l.    On or about May 15, 2003, the defendant RALPH
D. CASBARRO executed an order to purchase 40,000 shares of
Solectron Corp. common stock at a price of approximately $3.75
per share on behalf of the day traders at A.B. Watley.

        m.    On or about June 23, 2003, the defendant
TIMOTHY J. O'CONNELL executed an order to purchase 50,000 shares

of Ford Motor Co. common stock at a price of approximately $11.60 per share on behalf of the day traders at A.B. Watley.

n.    On or about June 23, 2003, the defendant RALPH D. CASBARRO executed an order to sell 50,000 shares of Ford Motor Co. common stock at a price of approximately $11.60 per share on behalf of the day traders at A.B. Watley.

o.    On or about August 5, 2003, the defendant KENNETH E. MAHAFFY, JR., executed an order to purchase 25,000 shares of Lucent Technologies Inc. common stock at a price of approximately $1.71 per share on behalf of the day traders at A.B. Watley.

p.    On or about August 5, 2003, the defendant KENNETH E. MAHAFFY, JR., executed an order to sell 25,000 shares of Lucent Technologies Inc. common stock at a price of approximately $1.71 per share on behalf of the day traders at A.B. Watley.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS TWENTY-TWO THROUGH THIRTY-SEVEN
### (Travel Act Violations)

26.    The allegations contained in paragraphs 1 through 18 and 25 are realleged and incorporated as though fully set forth in this paragraph.

27.    On or about the dates indicated below, within the Eastern District of New York and elsewhere, the defendants

indicated below, together with others, did knowingly and intentionally use the mail and facilities of interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit: Commercial Bribe Receiving in the Second Degree, in violation of New York Penal Law Section 180.05, and thereafter perform and attempt to perform the promotion, management, establishment, carrying on, and facilitation of the promotion, management, and carrying of such unlawful activity, to wit: by executing trades through the New York Stock Exchange and causing trade confirmations to be transported through the United States mail, as indicated below:

| COUNT | DEFENDANTS | TRANSACTION | COMMISSION/ BRIBE | ACCOUNT | DATE |
|-------|-----------|-------------|-------------------|---------|------|
| 22 | MAHAFFY O'CONNELL | Sale of 15,000 shares of General Electric Co. common stock at a price of approximately $32.40 per share | $900 | A.B. Watley's Merrill Lynch Account | 8/22/02 |
| 23 | GHYSELS | Purchase of 15,000 shares of General Electric Co. common stock at a price of approximately $32.40 per share | $900 | A.B. Watley's Lehman Account | 8/22/02 |

| COUNT | DEFENDANTS | TRANSACTION | COMMISSION/ BRIBE | ACCOUNT | DATE |
|-------|-----------|-------------|-------------------|---------|------|
| 24 | MAHAFFY O'CONNELL | Purchase of 40,000 shares of Solectron Corp. common stock at a price of approximately $3.79 per share | $2,400 | A.B. Watley's Merrill Lynch Account | 9/13/02 |
| 25 | GHYSELS | Sale of 40,000 shares of Solectron Corp. common stock at a price of approximately $3.79 per share | $2,400 | A.B. Watley's Lehman account | 9/13/02 |
| 26 | MAHAFFY O'CONNELL | Sale of 30,000 shares of Solectron Corp. common stock at a price of approximately $3.44 per share | $1,800 | A.B. Watley's Merrill Lynch account | 11/14/02 |
| 27 | CASBARRO | Purchase of 30,000 shares of Solectron Corp. common stock at a price of approximately $3.44 per share | $1,800 | A.B. Watley's Citigroup account | 11/14/02 |

| COUNT | DEFENDANTS | TRANSACTION | COMMISSION/ BRIBE | ACCOUNT | DATE |
|---|---|---|---|---|---|
| 28 | MAHAFFY O'CONNELL | Sale of 20,000 shares of Dole Food Company, Inc. common stock at a price of approximately $32.65 per share | $1,200 | A.B. Watley's Merrill Lynch account | 12/19/02 |
| 29 | CASBARRO | Purchase of 20,000 shares of Dole Food Company, Inc. common stock at a price of approximately $32.65 per share | $1,200 | A.B. Watley's Citigroup account | 12/19/02 |
| 30 | O'CONNELL | Purchase of 20,000 shares of Barrick Gold Corp. common stock at a price of approximately $15.02 per share | $1,200 | A.B. Watley's Merrill Lynch account | 3/24/03 |
| 31 | CASBARRO | Sale of 20,000 shares of Barrick Gold Corp. common stock at a price of approximately $15.02 per share | $1,200 | A.B. Watley's Citigroup account | 3/24/03 |

24

| COUNT | DEFENDANTS | TRANSACTION | COMMISSION/ BRIBE | ACCOUNT | DATE |
|-------|------------|-------------|-------------------|---------|------|
| 32 | O'CONNELL | Sale of 40,000 shares of Solectron Corp. common stock at a price of approximately $3.75 per share | $2,400 | A.B. Watley's Merrill Lynch account | 5/15/03 |
| 33 | CASBARRO | Purchase of 40,000 shares of Solectron Corp. common stock at a price of approximately $3.75 per share | $2,400 | A.B. Watley's Citigroup Account | 5/15/03 |
| 34 | O'CONNELL | Purchase of 50,000 shares of Ford Motor Co. common stock at a price of approximately $11.60 per share | $3,000 | A.B. Watley's Merrill Lynch account | 6/23/03 |
| 35 | CASBARRO | Sale of 50,000 shares of Ford Motor Co. common stock at a price of approximately $11.60 per share | $3,000 | A.B. Watley's Citigroup account | 6/23/03 |

| COUNT | DEFENDANTS | TRANSACTION | COMMISSION/ BRIBE | ACCOUNT | DATE |
|-------|-----------|-------------|-------------------|---------|------|
| 36 | MAHAFFY | Purchase of 25,000 shares of Lucent Technologies Inc. common stock at a price of approximately $1.71 per share | $1,250 | A.B. Watley's Citigroup account | 8/5/03 |
| 37 | MAHAFFY | Sale of 25,000 shares of Lucent Technologies Inc. common stock at a price of approximately $1.71 per share | $1,250 | A.B. Watley's Citigroup account | 8/5/03 |

(Title 18, United States Code, Sections 1952(a)(3), 2 and 3551 et seq.)

### COUNT THIRTY-EIGHT
(False Statement)

28.  The allegations contained in paragraphs 1 through 18 are realleged and incorporated as though fully set forth in this paragraph.

29.  On or about June 7, 2004, within the Eastern District of New York, the defendant TIMOTHY J. O'CONNELL did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the

United States, to wit: the United States Postal Inspection
Service, in that O'CONNELL falsely stated that he never provided
anyone with access to a Merrill Lynch Squawk Box, when in fact,
as he then and there well knew and believed, he had provided the
Day Traders with access to Merrill Lynch's Squawk Box.

(Title 18, United States Code, Sections 1001(a)(2)
and 3551 et seq.)

### COUNT THIRTY-NINE
(Conspiracy to Commit Witness Tampering)

30.   The allegations contained in paragraphs 1 through
18 are realleged and incorporated as though fully set forth in
this paragraph.

31.   In or about and between October 2004 and April
2005, both dates being approximate and inclusive, within the
Eastern District of New York, the defendant TIMOTHY J. O'CONNELL,
together with others, did knowingly and intentionally conspire to
corruptly persuade and engage in misleading conduct toward Jane
Doe, an individual whose identity is known to the Grand Jury,
with intent to (a) influence the testimony of Jane Doe in an
official proceeding, to wit: the Grand Jury Investigation,
(b) cause and induce Jane Doe to withhold testimony from an
official proceeding, to wit: the Grand Jury Investigation, and
(c) hinder, delay and prevent the communication to a law
enforcement officer of the United States, to wit: a United States
Postal Inspector, of information relating to the commission and

possible commission of the federal offenses charged in Counts One through Thirty-Seven, in violation of Title 18, United States Code, Sections 1512(b)(1), 1512(b)(2)(A) and 1512(b)(3).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## COUNT FORTY
(Witness Tampering)

32. The allegations contained in paragraphs 1 through 18 are realleged and incorporated as though fully set forth in this paragraph.

33. In or about and between October 2004 and April 2005, both dates being approximate and inclusive, within the Eastern District of New York, the defendant TIMOTHY J. O'CONNELL, together with others, did knowingly, intentionally and corruptly persuade and engage in misleading conduct toward Jane Doe, with intent to (a) influence and prevent the testimony of Jane Doe in an official proceeding, to wit: the Grand Jury Investigation, (b) cause and induce Jane Doe to withhold testimony from an official proceeding, to wit: the Grand Jury Investigation, and (c) hinder, delay and prevent the communication to a law enforcement officer of the United States, to wit: a United States Postal Inspector, of information relating to the commission and

28

possible commission of the federal offenses charged in Counts One
through Thirty-Seven.

(Title 18, United States Code, Sections 1512(b)(1),
1512(b)(2)(A), 1512(b)(3), 2 and 3551 et seq.)

A TRUE BILL

_Pauline White_

FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:

**ACTING UNITED STATES ATTORNEY**
**PURSUANT TO 28 C.F.R. 0.136**

F# 2005R00711          **INFORMATION SHEET**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

1.     Title of Case:   United States v. Kenneth E. Mahaffy, Jr., Timothy J. O'Connell, Ralph D. Casbarro and David G. Ghysels, Jr.

2.     Related Magistrate Docket Number(s)     United States v. Timothy J. O'Connell, 05-M-505 (ILG)

      None ( )

3.     Arrest Date:         N/A

4.     Nature of offense(s):   X     Felony
                            ☐     Misdemeanor

5.     Related Civil or Criminal Cases - Title and Docket No(s). (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules):    United States v. Benjamin Grimaldi, 05-CR-548 (ILG)

6.     Projected Length of Trial:     Less than 6 weeks     (X)
                                         More than 6 weeks    ( )

7.     County in which crime was allegedly committed:     KINGS
      (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.     Has this indictment been ordered sealed?             (X) Yes   ( ) No

9.     Have arrest warrants been ordered?                 (X) Yes   ( ) No

10.   Is a capital count included in the indictment?         ( ) Yes   (X) No

                                     ROSLYNN R. MAUSKOPF
                                     UNITED STATES ATTORNEY

                  By:        _Michael Asaro_ (signature)

                            Michael Asaro
                            Assistant U.S. Attorney
                            (718) 254-7498

Rev. 10/01/03

# United States District Court

*For The*

*Eastern District of New York*

## United States of America

*Vs.*

Kenneth E. Mahaffy, Jr.,
Timothy J. O'Connell,
Ralph D. Casbarro and
David G. Ghysels, Jr.

no._____ CR.

I, the undersigned foreman of the Grand Jury of this court, at the 2/23/04 Term begun and held at Brooklyn, New York on the __11th__ Day of _August_ AD _2005_ in pursuance of Rule 6 (c) of the Federal Rules of Criminal Procedures, and herein file with the Clerk of the Court a record of the number of grand jurors concurring in the finding of the indictment in the above case, this record shall not to be made public except on order of the court, to wit:

_____19_____ Grand Jurors Concurring

_Pauline Waite_
Foreman signature