LAW OFFICE OF
# MARC FERNICH

MARC FERNICH  maf@fernichlaw.com  
ALSO ADMITTED IN MASSACHUSETTS

152 WEST 57TH STREET, 24TH FLOOR  
NEW YORK, NEW YORK 10019  
212-446-2346  
FAX: 212-459-2299  
www.fernichlaw.com

Feb. 22, 2010

**BY ECF**

Hon. John Gleeson  
U.S. District Judge, E.D.N.Y.  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re:   *US v. Mahaffy, et al.*, 05 CR 613 (JG) (SMG)

Dear Judge Gleeson:

Robert Malin respectfully joins his codefendants' new trial motions under Fed. R. Crim. P. 33 and *Brady v. Maryland*, 373 U.S. 83 (1963), adopting their arguments entirely.[1] This letter briefly explains why the cache of evidence admittedly suppressed by the government[2] – stacks of SEC deposition testimony by a spate of brokerage firm employees – is material to what the Court called the core jury issue for Malin: whether he knowingly and intentionally joined the conspiracy charged in the indictment. (T: 1195)

In short, the evidence supports an "honestly held belief" by Malin that "the information being transmitted to the A.B. Watley defendants was [not] confidential" – a complete defense to the indictment's sole conspiracy charge, as the Court instructed the jury at trial. T: 2584; *see also* T: 2324 (defense counsel arguing in summation, "if you are not convinced that Mr. Malin knew ... the information that came over those squawk boxes was stolen ... you must acquit him"). Thus, because Malin did not "agree[] to obtain [confidential] information ... [from] the brokerage houses," he could not have knowingly and intentionally joined the charged conspiracy. T: 1195 (quoting the Court in colloquy). It follows that the suppressed evidence is material for *Brady* purposes and mandates Rule 33 relief.

---

[1] Since the Watley defendants' liability is largely derivative of the broker defendants', the broker defendants' arguments apply equally to Malin.

[2] *See* 1/11/10 Govt. Mem. at 7 n.2.

Hon. John Gleeson
Feb. 22, 2010
Page 2

To elaborate, the only direct proof of Malin's knowledge came from government witness Jay Amore, who testified that he told Malin the confidentiality of squawked client order information was a "grey" area.  T: 897; *cf. id.* 916 (Malin asking Amore, on firing of Wachovia broker Lee Fleischman, "[A]re we in trouble[?] What's our exposure?  What do we have to worry about[?]").  The suppressed testimony confirms Amore's characterization and Malin's concomitant uncertainty about the information's confidentiality.  For it collectively shows that a slew of brokerage firm employees – from position traders to managers to compliance officials – were themselves unsure whether the information was confidential.  And the employees overwhelmingly agreed that no firm policies so classified the information.

By demonstrating its objective reasonableness under the circumstances, the suppressed evidence thus corroborates Malin's subjective doubt about the information's confidential or public status.  *E.g., U.S. v. Willie*, 941 F.2d 1384, 1401 (10th Cir. 1991) ("subjective intent" generally "established by indirect or circumstantial evidence," including "the objective reasonableness of defendant's beliefs"); *U.S. v. Mann*, 884 F.2d 532, 537 n.3 (10th Cir. 1989) (objective "reasonableness" of good faith defense properly considered in "determining whether a defendant's asserted beliefs are genuinely held").  After all, if the firms' own employees were "unable" to discern from their superiors' "meager guidance" whether squawked order flow was confidential, *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 256 (1989) (Scalia, J, joined by Rehnquist, C.J., and O'Connor and Kennedy, JJ., concurring), how could Malin, a less sophisticated outsider, know any better?  The question answers itself.  *Cf. Sorich v. U.S.*, 129 S. Ct. 1308, 1310 (2009) (Scalia, J., dissenting from certiorari denial) ("How can the public be expected to know what the statute means" when experts tasked with interpreting and applying it "themselves do not know, or must make it up as they go along?") (citation and internal quotes omitted).

In addition, the suppressed evidence suggests an innocent explanation for some of Malin's supposedly suspicious behavior, such as allegedly authorizing broker payments through circuitous "wash trades," and allegedly approving the traders' use of headphones – instead of the usual speakers – to hear Watley's squawk feeds during a NASD inspection. (T: 909-11)  Armed with the deposition transcripts and the other leads it would generate, counsel could plausibly argue that Malin was merely trying to avoid scrutiny of what he believed to be legitimate grey area activity, rather than covering up conduct he knew to be criminal.  Without the transcripts, however, counsel was left to obliquely imply the grey area theory on Amore's dubious testimony alone (T: 77, 2319), which Malin had spent most of the trial successfully discrediting.  The jury could not have missed the incongruity.

Hon. John Gleeson
Feb. 22, 2010
Page 3

In sum, the pile of deposition transcripts withheld by the government raise reasonable doubt on the key question before the jury – whether Malin knew squawked client order information was confidential – by validating his genuine view that he was lawfully operating in a grey area.  Since the transcripts thereby support an "honestly held belief" that the information was *not* "confidential," T: 2584, they rank as inescapably material for *Brady* purposes.  *E.g.,* T: 1195 (Court noting that "gray" area trading not "illegal").  Because suppression is conceded, and for all the reasons urged by Malin's codefendants, a new trial – if not outright dismissal – is warranted.

                                              Respectfully,

                                              /s/

                                            Marc Fernich

cc:     All Counsel (ECF)